No. 3118

Second Circuit

SMITH, Administrator, Etc., v. VINSON

(December 21, 1927. Opinion and Decree.)

*(Syllabus by the Editor)*

1. **Louisiana Digest—Payment—Par. 1, 2.**

Under Articles 2314 and 2160 of the Civil Code a debt may be paid and an obligation discharged by a third person no way concerned in it.

2. **Louisiana Digest—Payment—Par. 14; Obligations—Par. 133.**

An obligation once extinguished by payment or otherwise cannot be resurrected.

3. **Louisiana Digest—Bills and Notes—Par. 183, 189; Mortgages—Par. 120.**

Where the evidence shows that a mortgage note had been paid by a third person for the benefit of the debtor it was a dead instrument thereafter, and the mortgage died with the note.

Appeal from the Second Judicial District Court of Louisiana, Parish of Lincoln. Hon. S. D. Pearce, Judge.

Action by J. B. Smith, administrator, etc., against Mrs. Nannie A. Vinson.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

E. L. Walker, of Ruston, attorney for plaintiff, appellant.

Barksdale, Warren & McBride, of Ruston, attorneys for defendant, appellee.

ODOM, J. J. B. Smith, in his representative capacity as administrator of the succession of J. F. Haltom, deceased, alleged

that said estate is the holder and owner of a certain promissory note for $1750.00 secured by mortgage on certain real property in Lincoln parish, said note and mortgage having been executed by M. R. Vinson, the deceased husband of Mrs. Nannie A. Vinson, and sought to foreclose the mortgage by executory process.

Mrs. Vinson, the defendant, enjoined the sale of her property on the ground that J. F. Haltom, deceased, had obtained said note by unlawful means, that said estate was not the holder or owner thereof in due course, and, in substance, alleged that the obligation sued on had been extinguished by payment.

On final trial, the court perpetuated its preliminary writ of injunction, set aside the executory proceedings and ordered the note and the mortgage securing the same cancelled and the property released.

The plaintiff in the suit and defendant in injunction proceedings appealed.

## OPINION

The facts disclosed by the record are that M. R. Vinson, the husband of Mrs. Vinson, who lived in Lincoln parish, purchased some property in Monroe, Louisiana, through a real estate dealer named Staples. To close the deal, Vinson had to make a cash payment of $1750.00. He did not have the cash, but Staples, the real estate dealer, suggested to him that if he would make a note for that amount, payable to his own order, due one year from that date—March 20, 1924—endorse it in blank and secure the same by mortgage on real estate which he owned in Lincoln parish, he, Staples, would take the note and advance the cash himself, or would borrow the money, using Vinson's mortgage note as collateral.

Vinson executed the note and mortgage in question and delivered the note to Staples. Staples, in turn, borrowed $1750.00 from the Ruston State Bank and, as evidence of the debt, gave a note for that amount signed by himself and J. L. Hutcheson, and, as security, pledged the Vinson mortgage note as collateral. The money was delivered to Vinson who made the cash payment on the Monroe property, and that deal was closed.

Vinson, with his family, moved to Monroe, where he died on December 24, 1924, prior to the maturity of the note.

Mrs. Vinson, the widow, not having the means with which to pay the mortgage note, appealed to her brother, J. F. Haltom, to pay it for her. Haltom lived in Arkansas, was a bachelor, advanced in years, president of a bank, and wealthy. On March 16, 1925, he visited his sister in Monroe and it seems spent the night with her and the family.

On the following day, March 17, 1922, three days before the note was due, Haltom, in company with his nephew, Walter Vinson, son of his sister in Monroe, went to Ruston and sought Staples, the realtor to whom the Vinson mortgage note had been delivered. On meeting Staples Haltom asked him where the Vinson note was and stated "that they had come to pay it". On being told by Staples that the note was in the bank, Staples, Haltom and young Vinson went to the bank, where Staples introduced Haltom to the president, Mr. Atkins.

Staples says that Haltom told Atkins that he wanted to pay the note for Mrs. Vinson. The amount of the note and interest was $1890.00. Haltom drew a check on his bank in Arkansas for that amount in favor of the Ruston State Bank, where-

upon the bank marked Staples' note "paid" and delivered it to him.

Staples says that Haltom suggested to Atkins, president of the Ruston State Bank, that inasmuch as he, Haltom, was not known to the bank officials the bank might attach the Vinson mortgage note to Haltom's check so that Haltom would not get possession of the note until and unless the check was paid. Presumably this was done. However, J. B. Smith, administrator of Haltom's succession, who was cashier of the Bank of Stephens on which Haltom's check was drawn, says the note was not attached to the check when it reached the bank for payment.

Haltom was killed in an automobile accident about a year later. J. B. Smith was appointed administrator of his succession. He found the Vinson note among the papers belonging to the deceased, and, in his representative capacity, brought suit to collect it.

Plaintiff contends, on the one hand, that Haltom intended to purchase and did purchase the Vinson mortgage note, that Staples and the bank intended to transfer and did in fact transfer said note to him, and that he therefore became holder and owner thereof in due course.

If such be true, then Haltom's administrator is well within his rights.

Mrs. Vinson, on the other hand, contends that Haltom did not intend to purchase and that neither Staples nor the bank intended to sell said note, and that there was in fact no sale and no transfer of the note; but that Haltom intended to pay and did pay the note and thereby extinguished the obligation; and that therefore instead of Haltom's becoming the holder and owner of the note in due course, the note in his hands was a dead instrument.

As Haltom and Atkins, president of the Ruston State Bank, were dead at the time of the trial, we must therefore accept the testimony of Staples and Walter Vinson as to what took place in Ruston and at the bank.

From their testimony, the fact that Haltom intended to pay the Vinson mortgage note is perfectly clear.

Walter Vinson says his uncle, Haltom, spent the night with his mother's family in Monroe on March 16th; that on the following day his uncle asked him to take him to Ruston, that he wanted to pay the note; that he told him he intended to pay for Mrs. Vinson not only the note in question but also the balance she was due on the Monroe property and thereby relieve her of all indebtedness, and that he did not expect his sister to pay them.

We believe this, for, as stated, Haltom had no immediate family, was advanced in years, was wealthy and was apparently devoted to his sister.

Staples says that when Haltom met him in Ruston he asked where the Vinson note was; that he wanted to pay it. He says that Haltom told Atkins, president of the bank, that he wanted to pay the note, and, according to his recollection, said he wanted to pay it for Mrs. Vinson. Staples repeatedly stated in the course of his examination as a witness that it was his understanding from all that Haltom said to him and from what he heard him tell Atkins at the bank, that he intended to pay the Vinson mortgage note.

On page 9 of the testimony Staples said:

"My recollection is that he (Haltom) stated that he came to pay the Vinson note."

And he was asked:

"He didn't say he came to buy the Vinson note?"

And he answered:

"No, sir."

Again, Staples was asked:

"It was your understanding at the time that Mr. Haltom was paying your personal note and that he was then getting or to get the mortgage note?"

And he said:

"No, sir, he was not. I thought he was paying the mortgage note."

A debt may be paid and the obligation discharged by a third person no way concerned in it.

Civil Code, Articles 2314, 2160.
Gernon vs. McCan, 23 La. Ann. 84.
8 Corpus Juris, page 588, Section 826.
Obligations are extinguished by payment.
Civil Code, Article 2130.

And there is no resurrection of an extinguished obligation.

Johnson & Co. vs. Boice & Frellsen, 40 La. Ann. 273, 4 So. 163.

If Haltom paid the Vinson note, it was a dead instrument in his hands and the mortgage died with the note.

But counsel, in brief, says that Haltom "intended to purchase the note and did purchase it"; and he contends that Haltom's acts show that he did.

However, we find and hold to the contrary.

We find the rule stated in 8 Corpus Juris, page 588, Section 826, to be as follows:

"If a bill or note is paid after its maturity by a stranger to the paper, it will in general be held to be a purchase and not a payment of the instrument. Whether it is a payment or purchase is, however, a question of intention to be determined as a fact from the acts and declarations of the parties and from the surrounding circumstances. However, an agreement between the maker and the third person is not of controlling force; it is the agreement between the third person and the holder that controls."

The fact that Haltom intended to pay the Vinson note is made evident by the fact that he told Walter Vinson that he intended to pay it, and told Staples and Atkins, president of the bank, that he was there to pay the Vinson note.

Haltom said not a word to Staples, Atkins or anyone else about buying the note, and there is not a word of testimony in the record to indicate that he intended to do other than to pay the note and relieve his sister of the obligation.

The testimony of Staples makes it clear that there was no agreement between the bank, the holder of the note, and Haltom that it should be transferred.

Counsel argues that the fact that Haltom suggested to Atkins that he attach the note to the check, which was drawn on a bank in Arkansas, indicates that he intended to purchase and not pay it.

That fact might be somewhat persuasive on the point if unexplained. But the testimony shows that this was done solely as a protection to the bank of Ruston. Haltom, being a stranger to the bank, it was hardly to be expected that the bank would surrender its collateral until the check was finally paid, and for that reason Haltom suggested that the note be attached to the check so that he could not get possession of it unless the check was paid.

Mrs. Vinson having discharged her burden of showing that the obligation was extinguished, it necessarily follows that the executory proceedings must fall.

It is suggested by counsel for the administrator that inasmuch as Mrs. Vinson did not specifically plead payment of the note, the court cannot consider testimony on that point.

We think, however, the testimony was admissible under the pleadings. Besides, the testimony showing payment was admitted without objection.

The judgment appealed from is correct and is accordingly affirmed with costs.